

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed June 9, 2017**

_Barbara J. Houser_

**United States Bankruptcy Judge**

_____

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO. 14-35300-BJH** |
| **YVONNE MARIE HARRIS-** | § | **(Chapter 13)** |
| **NUTALL,** | § | |
| | § | **Related to ECF Nos. 79 & 95** |
| DEBTOR. | | |

### MEMORANDUM OPINION AND ORDER REGARDING (1) ORDER TO SHOW CAUSE, AND (2) APPLICATION OF PLAINTIFF'S SPECIAL COUNSEL FOR ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES

Before the Court are the (1) Order to Show Cause as to Why the Order Approving

Employment of Special Counsel Nunc Pro Tunc Should Not be Set Aside as an Impermissible Fee

Sharing Agreement [BC ECF No. 79][1] (the "**Order to Show Cause**"), and (2) Application of

---

[1] Citations to the docket in this bankruptcy case (the "**Second Bankruptcy Case**") shall take the form "BC ECF No. ___," while citations to the adversary proceeding styled _Harris-Nuttall v. Nationstar_, 15-3114 (the "**Adversary Proceeding**"), shall take the form "AP ECF No. __."  Citations to other cases shall take the form "Case No.__, ECF No. __."

Plaintiff's Special Counsel for Allowance of Compensation and Reimbursement of Expenses [BC ECF No. 95] (the "**Fee Application**") filed by Kellett & Bartholow PLLC ("**KB**"). For the reasons fully explained below, the Court will award KB fees of $52,031.25[2] for services rendered and $1,585 in reimbursement for expenses incurred for the period of November 7, 2014 through and including August 31, 2016. Although the Court will not set aside the order authorizing KB's employment as special counsel, it concludes that the co-counsel agreement between KB and the Allmand Law Firm, PLLC ("**Allmand**") is an improper fee sharing agreement prohibited by 11 U.S.C. § 504, and that the co-counsel agreement must be cancelled in accordance with 11 U.S.C. § 329(b). As such, Allmand shall share in no part of the fees awarded to KB herein.

## I.    JURISDICTION AND VENUE

The Court has subject matter jurisdiction under 28 U.S.C. § 1334. This matter is a core proceeding as defined under 28 U.S.C. § 157(b)(2)(A), and venue is proper in this Court under 28 U.S.C. § 1408. This matter, which the District Court has referred to this Court under its Standing Order of Reference, is a contested matter as defined under Bankruptcy Rule 9014. Thus, this Memorandum Opinion and Order contains the Court's findings of fact and conclusions of law pursuant to Federal Rules of Bankruptcy Procedure 7052 and 9014.[3]

---

[2] KB requests $71,575 in fees, of which the Court will allow $52,031.25 for the reasons explained herein. The reductions are comprised of: (1) $320 in fees billed prior to the effective date of KB's employment (although at the Fee Hearing KB agreed to reduce its fees by $325), (2) $325 in travel time incurred on March 1, 2016 and July 15, 2016 that was to be billed at one-half of KB's standard hourly rates per § II.G of Appendix F to the Local Bankruptcy Rules, and (3) $1,550 in fees incurred after August 31, 2016 (which KB agreed to voluntarily reduce at the Fee Hearing), which results in fees of $69,375. The Court will further reduce KB's fees by 25% as a sanction for KB's entry into an impermissible fee sharing agreement—*i.e.*, the Co-Counsel Agreement—and its failure to adequately make certain disclosures (as explained below), resulting in allowed fees of $52,031.25.

[3] Any finding of fact more properly considered a conclusion of law, or any conclusion of law more properly considered a finding of fact, should be so considered.

## II.    FACTUAL AND PROCEDURAL HISTORY

### A.    The Debtor's First Bankruptcy Case

Yvonne Harris-Nutall (the "**Debtor**") filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code on December 2, 2008, commencing case no. 08-36314-HDH-13 (the "**First Bankruptcy Case**").  During the First Bankruptcy Case, the Debtor fell behind on her postpetition mortgage payments and the servicer of her mortgage loan, Bank of America, N.A., filed a motion for relief from stay [08-36314, ECF No. 22].  On September 30, 2009, the court entered the Agreed Order Conditioning Automatic Stay as to Debtor [08-36314, ECF No. 29] that addressed the Debtor's mortgage arrearage.

On August 13, 2013, Nationstar Mortgage, LLC ("**Nationstar**") filed a notice of transfer of claim [08-36314, ECF No. 92], and Nationstar began servicing the Debtor's mortgage loan.  On December 17, 2013, the Chapter 13 Trustee filed notices of final cure payment regarding the Debtor's mortgage arrearages, showing that the Debtor had paid all amounts necessary to cure her mortgage defaults [08-36314, ECF Nos. 102 & 103].  Nationstar failed to respond to the notices, and the Debtor received her Chapter 13 discharge on January 13, 2014 [08-36314, ECF No. 106].

### B.    The Debtor's Second Bankruptcy Case and the Adversary Proceeding

On March 7, 2014, Nationstar allegedly disbursed $12,321.38 to pay past-due property taxes owing on the Debtor's homestead (the "**Disbursement**"), which resulted in the Debtor having a significantly increased monthly mortgage payment that she could not afford.  Plaintiff's Original Complaint [AP ECF No. 1] ¶¶ 22-24.  As a result, the Debtor filed a second petition for relief under Chapter 13 of the Bankruptcy Code on November 3, 2014, commencing the Second Bankruptcy Case.  *Id.* ¶ 25.

Allmand serves as the Debtor's general counsel in the Second Bankruptcy Case.  On February 11, 2015, the Debtor filed an application [BC ECF No. 13] (the "**Employment**

Application") seeking to employ KB (f/k/a Armstrong Kellett Bartholow, PLLC) as special litigation counsel to pursue various causes of action related to the Debtor's mortgage.  Attached to the Employment Application were copies of the Agreement for Employment and Power of Attorney signed by each of the Debtor, KB, and Allmand [BC ECF No. 18-4] (the "**Engagement Letter**"), and a copy of a co-counseling agreement signed by the Debtor, KB, and Allmand [BC ECF No. 18-3] (the "**Co-Counsel Agreement**").  The Court held a hearing to consider the Employment Application on May 21, 2015, and an order granting the Employment Application was entered on May 28, 2015 [BC ECF No. 25] (the "**Employment Order**").

On September 14, 2015, the Debtor, via KB, filed the Plaintiff's Original Complaint [AP ECF No. 1] (the "**Complaint**"), naming Nationstar Mortgage, Inc. and U.S. Bank, National Association as Trustee for BAFC 2008-FT1 as defendants (the "**Defendants**").  The Adversary Proceeding ultimately settled, as reflected in the settlement agreement filed under seal with this Court [BC ECF No. 78] (the "**Nationstar Settlement**") and the Agreed Order approving the Nationstar Settlement [BC ECF No. 84].

### C.       The Valentine Bankruptcy Case and the Co-Counsel Agreement

On July 26, 2016, KB filed an application to be employed as special counsel in the Chapter 13 case of Tammion Valentine [15-33227, ECF No. 84] (the "**Valentine Employment Application**").  As permitted by the Court's Local Bankruptcy Rules, KB served the Valentine Employment Application on 24 days' negative notice language.  LBR 9007-1.  After the objection deadline passed, KB filed a Certificate of No Objection [15-33227, ECF No. 91] and uploaded a proposed form of order for this Court's consideration.

Upon reviewing the Valentine Employment Application, the Court noted certain language in the proposed co-counsel agreement between KB and Ms. Valentine's bankruptcy counsel, Lee

Law Firm, PLLC, (the "**Lee Law Co-Counsel Agreement**") that raised concerns. Specifically, the Lee Law Co-Counsel Agreement states:

> In recognition of the sharing of responsibility in representing the Client, while dividing the labor between us, Lee Law Firm, PLLC and KB have agreed that, unless otherwise ordered by the Court, any lump sum amount provided for attorneys' fees as part of a court award or settlement will be divided between us as follows: First, expenses will be paid on a pro rata basis determined fairly by our relative contributions to the expenses of litigation. Second, fees will be to be paid on a pro rata basis determined fairly by our relative contributions to the litigation. **Lee Law Firm, PLLC will receive twenty-five percent (25%) of the total attorneys' fees received, net after payment of each firm's expenses, or Lee Law Firm, PLLC's hourly fees, whichever is greater**.

Lee Law Co-Counsel Agreement at 1 (emphasis added). Clearly, the Lee Law Co-Counsel Agreement contemplates a situation where (1) Lee Law Firm, PLLC could be paid more than its standard hourly rate for work performed, and (2) KB would share a portion of its allowed fees with Lee Law Firm, PLLC. Section 504 of the Bankruptcy Code, however, appears to prohibit this type of compensation arrangement (as will be discussed in detail below).

To address its concerns, the Court held a hearing to consider the Valentine Employment Application on October 3, 2016 (the "**Valentine Hearing**"), at which time it asked Thad Bartholow ("**Bartholow**") of KB to explain how the above-quoted language from the Lee Law Co-Counsel Agreement did not give rise to an improper fee sharing arrangement. Bartholow's answer, however, did not alleviate this Court's concerns. To the contrary, he candidly admitted that "the purpose of the 25% figure is to provide incentive to the Lee [Law] Firm to pursue these types of claims on behalf of their clients" (and to have KB perform the bulk of the work). Hr'g Tr. (10/3/2016) 5:21-23 (Bartholow).[4] The Court orally denied the Valentine Employment Application at the conclusion of the Valentine Hearing, and entered an Order denying the application without prejudice on October 11, 2016 [15-33227, ECF No. 98].

---

[4] Citations to hearing transcripts shall take the form Hr'g Tr. (date) page:line-page:line (speaker).

During the Valentine Hearing, Bartholow reminded the Court that it had previously authorized KB's employment as special counsel in the Debtor's Second Bankruptcy Case, including entry into the Co-Counsel Agreement with Allmand. Following the Valentine Hearing, the Court reviewed the Employment Application in the Debtor's Second Bankruptcy Case, finding that the Co-Counsel Agreement contained language identical to that quoted above from the Lee Law Co-Counsel Agreement.

### D. The Order to Show Cause and the Fee Application Filed in the Second Bankruptcy Case

Because the terms of the Lee Law Co-Counsel Agreement and the Co-Counsel Agreement are virtually identical, the Court reasonably assumed that Bartholow's statement regarding the purpose behind the Lee Law Co-Counsel Agreement would be equally applicable to the Co-Counsel Agreement. Accordingly, on October 12, 2016, the Court issued the Order to Show Cause, directing representatives from KB and Allmand to appear before the Court on November 8, 2016 and show cause as to why the Employment Order should not be set aside as an impermissible fee sharing agreement. On October 31, 2016, Allmand filed a request [BC ECF No. 82] to continue the hearing to permit it additional time to brief the fee-sharing issue. The Court granted the continuance [BC ECF No. 83], and rescheduled the hearing on the Order to Show Cause to November 28, 2016 (the "**OSC Hearing**"). Allmand then filed its Brief in Response to the Order to Show Cause [BC ECF No. 89] (the "**OSC Brief**") on November 22, 2016.

The Court held the OSC Hearing as rescheduled on November 28, 2016. At the conclusion of the OSC Hearing, the Court stated its intent to consider the propriety of the Co-Counsel Agreement when KB and/or Allmand requested Court approval of fees incurred in the Adversary Proceeding. KB filed its Fee Application on January 11, 2017, which was initially set for hearing on March 23, 2017. At KB's request, the Court rescheduled the hearing to May 1, 2017. As

reflected in the Fee Application, Allmand does not intend to file a fee application for the services it performed in the Adversary Proceeding—

> Pursuant to co-counsel agreement, Allmand Law Firm, PLLC ("Allmand") will receive 25% of the allowed fee after allowed expenses are deducted. Based on the amounts requested in this fee application, Allmand will receive $17,893.75. After receiving Allmand's records for work performed in connection with this case, Applicant has elected to seek only Applicant's fees because Allmand's work appears to have either been duplicative or was primarily related to the administration of Plaintiff's Chapter 13 case.

Fee Application at 2 n.1.

Nationstar filed a response to KB's Fee Application on February 6, 2017 [BC ECF No. 102] (the "**Response**") and KB and Allmand (together, "**Counsel**") filed a reply on March 20, 2017 [BC ECF No. 104]. The Court held an evidentiary hearing on the Fee Application on May 1, 2017, but due to an inadequate time estimate by Counsel and the Court's other commitments, closing arguments were delayed until May 24, 2017 (together, the "**Fee Hearing**"). With the parties' consent, the Court announced its preliminary ruling at the commencement of the May 24 hearing to assist the parties in focusing their closing arguments on the most relevant issues. The parties then made their closing arguments, which included addressing issues raised by the Court in its preliminary ruling. Having carefully considered the evidence, the parties' briefs, and the closing arguments of all counsel, this matter is now ripe for the Court's ruling.

### III. ANALYSIS OF THE CO-COUNSEL AGREEMENT

#### A. 11 U.S.C. § 504 and the General Prohibition Against Fee Sharing

Section 504(a) of Bankruptcy Code generally prohibits the sharing of compensation in bankruptcy cases—

> (a) Except as provided in subsection (b) of this section, a person receiving compensation or reimbursement under section 503(b)(2) or 503(b)(4) of this title may not share or agree to share—

> > (1) any such compensation or reimbursement with another person; or

(2) any compensation or reimbursement received by another person under such sections.

11 U.S.C. § 504(a).  The exceptions found in subsection (b) are limited and apply only to fees shared among (1) a member, partner, or regular associate in a professional association, corporation, or partnership, and (2) an attorney for a creditor that files a petition under § 303 and any other attorney contributing to the services rendered or expenses incurred by such creditor's attorney.  *Id.* § 504(b).  Accordingly, three elements must be met for there to be a violation of § 504(a):  (1) a person or entity was awarded compensation under § 503(b)(2) or § 503(b)(4), (2) a person or entity shared or agreed to share in the awarded compensation, and (3) the person or entity that shared or agreed to share in the awarded compensation does not fit within one of the statutory exceptions. *Id.*; *see In re Smith*, 397 B.R. 810, 817 (Bankr. E.D. Tex. 2008).

Here, it is undisputed that the Co-Counsel Agreement meets the second and third elements. As reflected by the Co-Counsel Agreement, KB and Allmand have agreed to share in any fees awarded to KB by the Court, with Allmand receiving an amount equal to the greater of its hourly rate for services rendered or 25% of the attorneys' fees awarded to KB, net after payment of each firm's expenses, thus satisfying the second element.  Co-Counsel Agreement at 1.  As to the third element, the record also shows that Allmand and KB are different law firms who have agreed to share fees earned in connection with the Second Bankruptcy Case, which does not involve a petition filed under § 303, so neither exception to the prohibition against fee sharing found in § 504(b) applies.

Thus, the only element at issue here is whether KB is being awarded compensation under either § 503(b)(2) or § 503(b)(4) of the Bankruptcy Code.  Taking these in reverse order, § 503(b)(4) permits "reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose expense is allowable under subparagraph (A), (B), (C), (D),

or (E) of paragraph (3) of this subsection." 11 U.S.C. § 503(b)(4). However, none of the situations

addressed § 503(b)(3)(A)–(E) are applicable here.[5]

In contrast, § 503(b)(2) permits an allowed administrative expense for "compensation and

reimbursement awarded under section 330(a) of this title." 11 U.S.C. § 503(b)(2). As relevant

here, § 330(a)(4)(B) states in part that:

> In a…chapter 13 case…, the court may allow reasonable compensation to the
> debtor's attorney for representing the interests of the debtor in connection with the
> bankruptcy case based on a consideration of the benefit and necessity of such
> services to the debtor and the other factors set forth in this section.

11 U.S.C. § 330(a)(4)(B). Thus, for this section to apply, KB must be representing the Debtor's

interests "in connection with" the Second Bankruptcy Case.

In the OSC Brief, Allmand argues that:

> The scope of representation in this adversary proceeding is not "in connection with
> the bankruptcy case" as that language would appear to relate to the administrative
> aspects of the debtor representation in the base [bankruptcy] case, as opposed to
> representation of the debtor in the adversary proceeding. Section 503(b)(4) refers
> to allowed administrative expenses for reasonable compensation for professional
> services rendered by an attorney. However, again administrative expenses are
> generally paid out of the estate, but in the instant case the attorney fees in question
> are being paid directly by a creditor in the case.

OSC Brief ¶ 23.

The OSC Brief, however, does not cite to any statute or precedent in support of its

proposition that KB's fees were not incurred "in connection with the bankruptcy case." And, at

the OSC Hearing, Bartholow admitted that "[a]nd unfortunately for me, my research has indicated

---

[5] Section 503(b)(3) permits an allowed administrative expense for the actual, necessary expenses incurred by:

(A) a creditor that files a petition under section 303 of this title; (B) a creditor that recovers, after the court's approval, for the benefit of the estate any property transferred or concealed by the debtor; (C) a creditor in connection with the prosecution of a criminal offense relating to the case or to the business or property of the debtor; (D) a creditor, an indenture trustee, an equity security holder, or a committee representing creditors or equity security holders other than a committee appointed under section 1102 of this title, in making a substantial contribution in a case under chapter 9 or 11 of this title; [and] (E) a custodian superseded under section 543 of this title, and compensation for the services of such custodian[.]

11 U.S.C. § 503(b)(3).

that 'in connection with the bankruptcy' is read very broadly." Hr'g Tr. (11/28/16) 48:6-8 (Bartholow). In making this admission, Bartholow was referring to the court's analysis in *In re Powell*, 314 B.R. 567 (Bankr. N.D. Tex. 2004) (Felsenthal, J.). In that case, Lori Powell filed for bankruptcy under Chapter 13, and the court later converted her case to Chapter 11. While the case was still pending under Chapter 13, however, Powell hired Brewer, Anthony, Middlebrook, Burley & Dunn ("**Brewer, Anthony**") to handle her divorce. *Id.* at 569. Brewer, Anthony later sought compensation as an administrative expense, and the debtor's husband objected on the grounds that the firm represented the debtor's interests personally and not those of the estate such that the representation was not "in connection with the bankruptcy case." *Id.* at 569-70. The court disagreed, finding that the term "in connection with the bankruptcy case" "must be read liberally to include attorney work for a debtor that could have a conceivable effect on the Chapter 13 case while a debtor prosecutes a Chapter 13 case." *Id.* at 571; *see Henley v. Malouf (In re Roberts)*, 556 B.R. 266 (Bankr. S.D. Miss. 2016) (adopting the *Powell* conceivable effect standard); *In re Hebert*, 2015 WL 5813438 (Bankr. W.D. La. Oct. 5, 2015) (same).

With this background in mind, we turn to the Complaint to determine whether the services rendered by KB in the Adversary Proceeding could have a conceivable effect on the Second Bankruptcy Case. The Complaint contains the following counts:

- Count I – Willful Violation of the Automatic Stay. The Debtor alleged that the Defendants willfully violated the automatic stay imposed in the Second Bankruptcy Case by continued attempts to collect the prepetition Disbursement via increased postpetition monthly mortgage payments. The Debtor sought actual damages, punitive damages, and reasonable attorneys' fees and costs.

- Count II – Violation of the Fair Debt Collection Practices Act as to defendant Nationstar. The Debtor alleged that Nationstar filed an improper proof of claim in the Second Bankruptcy Case (Claim No. 4 in which it sought to collect the Disbursement through the Debtor's Chapter 13 plan), while simultaneously seeking to collect the Disbursement through increased

postpetition mortgage payments. The Debtor sought actual damages, statutory damages, and attorneys' fees.

- Count III – Violation of Real Estate Settlement Procedures Act ("**RESPA**") and the Truth in Lending Act. The Debtor alleged that, during the Second Bankruptcy Case, KB sent multiple letters to Nationstar requesting information and disputing its servicing of the loan. Nationstar, however, allegedly failed to provide the Debtor with a response, in violation of the statutes. The Debtor sought actual damages, costs, attorneys' fees, and statutory damages.

- Count IV – Attorneys' Fees. The Debtor requested an award of attorneys' fees "pursuant to the Court's inherent powers and its [11 U.S.C.] § 105(a) powers."

The Complaint also requested in unnumbered counts:

- A judgement under the Federal Declaratory Judgment Act that the Defendants' actions in seeking repayment of the prepetition Disbursement via increased postpetition mortgage payments violated the automatic stay.

- A request for injunctive relief that would require the defendants to seek repayment of the Disbursement through the Debtor's Chapter 13 plan, thus reducing her monthly mortgage payments.

Although the Complaint sought various damages on the Debtor's behalf, a fundamental goal of the Adversary Proceeding was to address the alleged prepetition arrearage owing to Nationstar and to reduce the Debtor's mortgage payment to its pre-Disbursement level. This goal is reflected in the Nationstar Settlement, which fully addressed the Debtor's pre- and postpetition mortgage arrearages (which included the Disbursement) and established the allowed amount of Nationstar's claim. Indeed, determining Nationstar's claim (and the Debtor's monthly mortgage payments) was a key prerequisite to the Debtor's ability to confirm a Chapter 13 plan that permitted her to keep her home. Notably, when addressing the *Johnson* fee factor of "amount involved and results obtained" (discussed below), the Fee Application explains that "the results obtained were extraordinarily meaningful for Plaintiff: she got to save her house and reduce her loan principal balance by thousands of dollars, including the elimination of disputed pre-petition arrears." Fee

Application at 18. Moreover, KB also filed the amended objection to Nationstar's proof of claim [BC ECF No. 58], which was consolidated with the Adversary Proceeding [BC ECF No. 60]. This type of claim-related litigation, as reflected in both the Complaint and the amended objection, is undoubtedly "in connection with" the Second Bankruptcy Case. *See, e.g.,* 28 U.S.C. § 157(b)(2)(B) (listing the allowance or disallowance of claims as a "core" proceeding); *In re Davis*, 2009 WL 4856199, at *3 (Bankr. S.D. Miss. Dec. 9, 2009) (opining, "services that benefit the debtor in connection with the case are services that facilitate the successful completion of the debtor's plan").

Nonetheless, Counsel argues that, even if the elements of § 504(a) are facially met, the Co-Counsel Agreement does not violate the general prohibition against fee sharing or its underlying policy because KB's Court-approved fees will be paid by Nationstar. Because of this, and because Allmand is not seeking additional fees beyond those awarded to KB, Counsel argues that the Debtor and her creditors are unharmed because the funds are not property of the estate. *Id.* ¶¶ 24-26. The Court disagrees, as explained below

Courts have long recognized that fee sharing between attorneys in bankruptcy cases violates public policy. *See Weil v. Neary*, 278 U.S. 160 (1929) (condemning undisclosed fee sharing arrangement as taking the judicial function from the court). Indeed, fee sharing often "subjects the professional to outside influences over which the court has no control, which tends to transfer from the court some degree of power over expenditure and allowances." *In re Winstar Commc'ns, Inc.*, 378 B.R. 756, 760 (Bankr. D. Del. 2007) (citations omitted). Fee sharing may also inflate the cost of bankruptcy by giving the professionals who are sharing the fees an incentive to inflate fees in order to maximize each attorney's ultimate share. *In re Worldwide Direct, Inc.*, 316 B.R. 637, 649 (Bankr. D. Del. 2004). To combat these concerns, § 504 was enacted with the

purpose of preserving "'the integrity of the bankruptcy process so that the professionals engaged in bankruptcy cases attend to their duty as officers of the bankruptcy court, rather than treat their interest in bankruptcy cases as matters of traffic.'" *Winstar Commc'ns,, Inc.,* 378 B.R. at 760 (quoting *In re Warner,* 141 B.R. 762, 766 (M.D. Fla. 1992) (citing *In re Matis*, 73 B.R. 228, 231 (Bankr. N.D.N.Y. 1987)).

The fact that Nationstar will ultimately pay the fees that KB seeks to share with Allmand does not alleviate these concerns. To the contrary, the record clearly reflects that: (1) KB agreed to pay Allmand a portion of its allowed fees, (2) as Bartholow previously explained to the Court, the shared fees are to encourage Allmand to refer cases to KB, and (3) the value of the services Allmand performed in relation to the Adversary Proceeding are less than the 25% fee that it seeks to collect from KB. Accepting this argument leads to a situation where fees otherwise subject to Court oversight under §§ 330(a)(4)(B) and 504 could be removed from that oversight by agreement between counsel and a third party willing to pay counsel's fees. Such an interpretation of these provisions would end-run the very protections afforded by § 504 in the first instance.

Further, virtually every document that KB has filed with the Court expressly states that any fees awarded to KB in the Adversary Proceeding, including any fees KB may share with Allmand, are subject to Court approval. *See* Engagement Letter § 1.04 ("Because Client is in a Chapter 13 bankruptcy proceeding, all attorneys' fees and expenses must be approved by the Bankruptcy Court before payment by the Trustee and/or client."); Employment Order at 2 (stating that any "award of compensation is subject to final approval by this Court"); Co-Counsel Agreement at 1 (discussing fees as "awarded by the Court") and 2 (stating that, in the event fees are contested, "we will each submit our respective fee applications to the Court" and "[w]e will review each other's fee applications prior to filing with the Court"); Nationstar Settlement at ¶ 3 ("Plaintiff shall file

an application for approval of attorneys' fees and costs associated with the Adversary Proceeding and incurred through the date of this Agreement, as required by chapter 3 of the United States Bankruptcy Code and Federal Rule of Bankruptcy Procedure 2016(a).").

Counsel specifically represented to the Court and agreed with the Debtor, Nationstar, and among themselves that any fees awarded to KB in this case would be subject to Court review and approval, and it is § 330(a)(4)(B) that permits allowance of reasonable compensation to a Chapter 13 debtor's attorney for representing the interests of the debtor in connection with the bankruptcy case. Indeed, Counsel did not cite to, nor is the Court aware of, another provision of the Bankruptcy Code that would permit it to allow reasonable compensation to counsel representing a Chapter 13 debtor in connection with her bankruptcy case.

Thus, the Court finds and concludes that the Co-Counsel Agreement meets each of the three elements necessary to show that it is an improper fee-sharing agreement prohibited by 11 U.S.C. § 504. Specifically, (1) the compensation awarded to KB in the Adversary Proceeding is pursuant to §§ 503(b)(2) and 330(a)(4)(B), (2) KB and Allmand agreed that Allmand would share in the compensation awarded by the Court to KB, and (3) KB and Allmand do not fit within one of the statutory exceptions found in § 504(b).

### B. KB's Failure to Adequately Disclose the Terms of the Co-Counsel Agreement and its Prior Connections with Allmand

Under § 329(a) of the Bankruptcy Code, an attorney representing a debtor in or in connection with a bankruptcy case must file with the court "a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation." 11 U.S.C. § 329(a). The statement must also include a disclosure of whether the attorney has shared or agreed to share the

compensation with any other entity, and "the particulars of any such sharing or agreement to share by the attorney, but the details of any agreement for the sharing of the compensation with a member or regular associate of the attorney's law firm shall not be required." FED. R. BANKR. P. 2016(b).

In addition to the disclosures required by § 329(a) and Bankruptcy Rule 2016(b), Bankruptcy Rule 2014(a) requires that the application of a professional seeking employment under § 327[6] disclose any proposed compensation arrangement and, to the best of the applicant's knowledge, all connections with various parties in interest, including the debtor, creditors, and their respective attorneys and accountants. FED. R. BANKR. P. 2014(a). Further, "the application shall be accompanied by a verified statement of the person to be employed setting forth the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee." *Id.*

In this regard, Bartholow's affidavit submitted in support of KB's employment [BC No. 18-1] (the "**Bartholow Affidavit**") states that:

> to the best of my knowledge there are no connections between [KB] and its partners on the one hand and …any attorneys, accountants, and financial consultants who represent or may represent claimants or other parties in interest in this case….

Bartholow Affidavit ¶ 6. In the next paragraph, Bartholow discloses the existence of the Co-Counsel Agreement, which is clearly a connection between Allmand and KB. *Id.* ¶ 7. However, neither the Bartholow Affidavit nor the Employment Application discloses (1) the terms of the Co-Counsel Agreement, instead requiring the reader to parse through the terms of the Co-Counsel

---

[6] During closing arguments, KB argued that it was not employed under § 327 because the Employment Order does not specifically reference that section of the Bankruptcy Code. When pressed by the Court, however, counsel was unable to state (nor is the Court aware of) what other provision of the Bankruptcy Code would permit KB's employment by the Debtor under the facts of this case.

Agreement herself, or (2) the fact that KB and Allmand have entered into at least one similar agreement in the past—a connection only disclosed orally at the Fee Hearing.[7]

Although the Court does not believe that KB (1) concealed the Co-Counsel Agreement, as it was attached to the Employment Application and was at least cryptically referenced in the Employment Application, or (2) intentionally misled the Court, its disclosures regarding the Co-Counsel Agreement were less than complete, and the disclosure of its connections with Allmand were clearly deficient. The almost certain fee sharing between KB and Allmand in the Second Bankruptcy Case should have been expressly disclosed in the body of the Employment Application and in the Bartholow Affidavit so that the Court (and other parties in interest) could properly evaluate the effect of the fee sharing provision. Moreover, KB was clearly required to disclose as a prior connection its agreement to share fees with Allmand in the *In re Kristin Brunner-Halteman* case, which KB failed to do.

The Court takes these failures to disclose very seriously, and so should counsel. Indeed, KB's failure in this regard is grounds for this Court to reduce (or even deny in full) its fees. *See Waldron v. Adams & Reese, L.L.P. (In re Am. Int'l Refinery Inc.)*, 676 F.3d 455, 465-66 (5th Cir. 2012) ("Courts may deny all compensation to professionals who fail to make adequate disclosure, and 'counsel who fail to disclose timely and completely their connections proceed at their own risk because failure to disclose is sufficient grounds to revoke an employment order and deny

---

[7] *See* Application to Employ Special Counsel Nunc Pro Tunc filed April 4, 2014 in the case *In re Kristin Brunner-Halteman* [12-32429-HDH-13, ECF No. 38], attached to which is a co-counsel agreement between KB and Allmand that is substantively identical to the Co-Counsel Agreement. Judge Hale approved KB's employment in *In re Brunner-Halteman* on April 21, 2014, *id.* ECF No. 46, and KB's fees and costs were allowed in the amount of $175,000 pursuant to a Judgment entered August 25, 2016, *id.* ECF No. 103. Bartholow testified at the Fee Hearing that KB was currently holding 25% of the fees awarded in the *Brunner-Halteman* case in trust (the amount otherwise payable to Allmand) "out of concern for the Court's ruling in this case." Hr'g Tr. (5/1/17) 85:22-86:2 (Bartholow).

compensation.'") (quoting *I.G. Petroleum v. Fenasci (In re West Delta Oil Co., Inc.)*, 432 F.3d 347, 355 (5th Cir. 2005)).

Given KB's failure to adequately disclose the fee-sharing arrangement and its connections with Allmand, and to acknowledge KB's entry into an improper fee-sharing agreement with Allmand in violation of 11 U.S.C. § 504, the Court concludes that a monetary sanction of some sort should be imposed upon KB. In evaluating what monetary sanction would be appropriate, the Court concludes that a 25% reduction of the fees otherwise allowable to KB for its representation of the Debtor is appropriate, as this is the amount of fees that KB agreed to share with Allmand in violation of 11 U.S.C. § 504. In other words, while KB should be paid for its services that benefitted the Debtor, it should not be rewarded for its entry into an improper fee-sharing agreement, particularly in light of its failures to adequately disclose. The Court finds that this reduction sufficiently addresses KB's failure to comply fully with the disclosure requirements imposed by the Bankruptcy Code and Rules, while also recognizing that KB provided necessary and beneficial services to the Debtor in the Adversary Proceeding. *See In re Anderson*, 936 F.2d 199, 204 (5th Cir. 1991) ("Under the facts and circumstances of this case [involving a violation of § 504], we would likely have affirmed a total disallowance of fees had the bankruptcy court so held. But, given the broad discretion of that court in such matters, we do not find an abuse of discretion in the grant of attorney's fees vel non or in the amount granted."). Although this ruling will result in Nationstar paying less in attorneys' fees than it would have otherwise been required to pay if KB had not entered into the Co-Counsel Agreement in the first instance, the Court believes that this is the appropriate outcome here.

## C.        Cancellation of the Co-Counsel Agreement Under 11 U.S.C. § 329(b)

As previously explained, § 329(a) of the Bankruptcy Code requires that an attorney representing a debtor in or in connection with a bankruptcy case file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year prior to the petition date for services rendered or to be rendered in contemplation of or in connection with the bankruptcy case. 11 U.S.C. § 329(a); *see also* FED. R. BANKR. P. 2016(b). If the Court finds that such compensation exceeds the reasonable value of the services rendered, it may cancel the agreement. 11 U.S.C. § 329(b).

Notably, this disclosure requirement (as well as those discussed above) apply equally to Allmand. A review of the docket, however, shows that Allmand has only disclosed its agreement to accept $3,500 for serving as the Debtor's bankruptcy counsel in the Second Bankruptcy Case. *See* Disclosure of Compensation of Attorney for Debtor [BC ECF No. 1] at 42 of 56. At no point has Allmand separately disclosed the fee arrangement set forth in the Co-Counsel Agreement.

Moreover, although the Co-Counsel Agreement permitted Allmand the option to seek payment for its hourly fees, it has chosen not to do so. Instead, as explained in KB's Fee Application:

> Pursuant to co-counsel agreement, Allmand Law Firm, PLLC ("Allmand") will receive 25% of the allowed fee after allowed expenses are deducted. Based on the amounts requested in this fee application, Allmand will receive $17,893.75. After receiving Allmand's records for work performed in connection with this case, Applicant [KB] has elected to seek only Applicant's fees because Allmand's work appears to have either been duplicative or was primarily related to the administration of Plaintiff's Chapter 13 case.

Fee Application at 2 n.1. Notably, this language is the only information in the record regarding the nature and extent of the services Allmand rendered in the Adversary Proceeding. And, based upon this language, it is clear that the value of the services Allmand rendered in the Adversary Proceeding total an amount less than the 25% fee it seeks to collect from KB. Because of this, the

Court concludes that the Co-Counsel Agreement must be cancelled under the provisions of 11 U.S.C. § 329(b). Upon cancellation, the Co-Counsel Agreement shall be unenforceable and Allmand shall not be entitled to any portion of the fees awarded to KB in the Adversary Proceeding.

### D.        Sua Sponte Amendment of the Employment Order

Finally, in regards to its Order to Show Cause, the Court will not set aside the Employment Order. Instead, the Court sua sponte amends the Employment Order to the extent it may have impliedly authorized KB to enter into the Co-Counsel Agreement. *See Baum v. Blue Moon Ventures, LLC*, 513 F.3d 181 (5th Cir. 2008) (district court may sua sponte modify its order pursuant to FED. R. CIV. P. 60(b) if the modification is preceded by appropriate notice and opportunity for hearing); *McDowell v. Celebrezze*, 310 F.2d 43, 44 (5th Cir. 1962) (same). The terms of KB's employment under the Employment Order are otherwise unchanged.

## IV.        ALLOWANCE OF KB'S REASONABLE FEES AND EXPENSES

### A.        Standard of Review

Under § 330(a)(4)(B) of the Bankruptcy Code, the court may allow "reasonable compensation to the debtor's attorney for representing the interests of the debtor in connection with the bankruptcy case based on a consideration of the benefit and necessity of such services to the debtor and the other factors set forth in this section." 11 U.S.C. § 330(a)(4)(B).

The "other factors" set forth in § 330 that the Court is to consider include:

the nature, the extent, and the value of such services, taking into account all relevant factors, including (A) the time spent on such services; (B) the rates for such services; (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title; (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue or task addressed; and (E) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).

In addition, the Fifth Circuit evaluates whether an award for attorneys' fees is reasonable pursuant to a "lodestar" analysis under factors provided in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974) (establishing what is commonly known as the "*Johnson* factors" for the determination of the reasonableness of an award for attorneys' fees). The *Johnson* factors are: (1) the time and labor required, (2) the novelty and difficulty of the questions, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases. *Id.* at 717–18.

The lodestar fee is equal to the number of hours reasonably expended multiplied by a reasonable hourly rate. *Rutherford v. Harris County, Texas*, 197 F.3d 173, 192 (5th Cir. 1999). The Court may then adjust the lodestar to reflect the special circumstances of the case and the *Johnson* factors. *McClain v. Lufkin Indus.*, 519 F.3d 264, 268 (5th Cir. 2008) (citing *Johnson*, 488 F.2d at 714); *In re Cahill*, 428 F.3d 536, 539–40 (5th Cir. 2005) (applying the *Johnson* factors in the context of a bankruptcy case). Overall, the Court has broad discretion in determining the amount of reasonable attorney's fees. *See Cahill*, 428 F.3d at 539.

### B.        Nationstar's Objection

Nationstar objects to the allowance of KB's fees and expenses on multiple grounds. First, Nationstar argues that KB's fees and expenses should be disallowed in their entirety because (1) under the "American Rule" parties are to bear their own costs of litigation, (2) although KB is only seeking allowance of fees for Nationstar's alleged stay violation, it failed to segregate fees among the various categories of services it performed, and (3) KB is a party to an improper fee-sharing arrangement. The Court will address these objections in turn.

First, the Court is perplexed as to why Nationstar would argue that the Court must disallow KB's fees in full based on the "American Rule," whereby a litigant is not entitled to recover attorneys' fees in the absence of explicit statutory or contractual authority. Notably, as part of the Nationstar Settlement, the parties established a contractual mechanism for the Debtor to seek payment of KB's fees and expenses, with Nationstar agreeing to pay the amounts ultimately allowed by a final, non-appealable order. Although the Nationstar Settlement does permit Nationstar to object to the payment of KB's fees and expenses on all grounds, to now argue that the American Rule prohibits payment of fees under a settlement agreement that expressly permits such payment is specious at best. Accordingly, this objection is overruled.

As to its second objection, Nationstar argues that:

> Debtor asserted four causes of action in the adversary proceeding. However, Special Counsel [KB] only seeks recovery of attorneys' fees based on a single cause of action—violation of the automatic stay. Special Counsel should be required to segregate its fees to identify what fees advanced the stay violation claim and what fees advanced the three claims for which Special Counsel does not seek fees…. The Application provides no explanation regarding what time relates to the stay violation or the other claims asserted in the adversary proceeding. Therefore, the Court has no basis to award any fees to Special Counsel for work on the stay violation claim. The Application should be denied for this reason alone.

Response ¶¶ 16-17. This objection is also perplexing. Notably, the Nationstar Settlement expressly permits the Plaintiff to seek *all* attorneys' fees and costs associated with the Adversary

Proceeding incurred through the date of the settlement, and Nationstar readily admits that the Adversary Proceeding involved multiple claims and not just an alleged stay violation. Additionally, there is nothing in the Fee Application limiting the fees sought to a single cause of action. To the contrary, KB is clearly seeking allowance of all fees and costs it believes are associated with the Adversary Proceeding. Ultimately, it appears to the Court that Nationstar is relying on a few paragraphs of the Fee Application,[8] taken out of context, to argue that the Court should disallow KB's fees in full. The Court finds this argument both unsupported by the record and wholly unpersuasive. Accordingly, this objection is overruled.

Next, Nationstar argues that the Court should disallow KB's fees and expenses in full because it is a party to an improper fee sharing agreement. In support of this argument, Nationstar cites to *In re Egwu*, 2012 WL 5193958, at *4 (Bankr. D. Md. Oct. 19, 2012). Although *Egwu* also involved a fee-sharing arrangement, the emphasis of the decision was not only the existence of the fee sharing agreement, but counsel's failure to disclose that agreement to the Court:

> Counsel did not disclose the nature of his fee-sharing agreement until he filed his Fee Application well over a year after the commencement of the case. Even then he did not file the Amended Disclosure until after the Court questioned him regarding the discrepancy between his initial Disclosure of Compensation and the Fee Application. And this is true notwithstanding the fact that the Retainer Agreement expressly acknowledges the likelihood that an attorney other than Mr. Cahn might be hired to "work on" the Debtor's case.

*Id*.

Here, as previously found, there is nothing in the record indicating that KB concealed the Co-Counsel Agreement or intentionally misled the Court. To the contrary, KB attached a copy of the Co-Counsel Agreement to the Employment Application, although the implications of that agreement were not expressly disclosed in the Employment Application and went initially

---

[8] Fee Application at 7, 12.

unnoticed by the Court. Had the Court focused on the terms of the Co-Counsel Agreement earlier in the Second Bankruptcy Case and voiced its concerns, KB would have had the opportunity to resolve this issue prior to incurring significant fees. Moreover, in *Egwu*, the attorney involved in the fee-sharing agreement did a poor job representing the debtor, which appeared to be a contributing factor to the disallowance of fees. *Id.* ("While there were valuable services rendered, that value is clouded by the mismanagement of the Debtor's Section 341 meeting and in court representation of which the fee-sharing arrangement was part and parcel."). The record before this Court, however, clearly establishes that KB was both competent and diligent in prosecuting the Debtor's claims in the Adversary Proceeding. Although the Court will reduce KB's allowed fees for its failure to make adequate and complete disclosures in relation to the Co-Counsel Agreement (*see* § III.B, *supra*), it will not disallow KB's fees in full. Thus, the objection is partially sustained as set forth herein.

Nationstar further argues that, if KB's fees and expenses are not disallowed in full, they should be reduced by: (1) a minimum of 25%, since that is the amount KB agreed to share with Allmand, (2) amounts incurred prior to KB filing the Complaint, (3) amounts incurred after the Debtor rejected Nationstar's proposed settlement, (4) amounts incurred related to the Debtor's requests for information and notices of error, (5) amounts incurred in filing an amended claim objection, and (6) amounts incurred after the date of the Nationstar Settlement. Nationstar also objects to the allowance of KB's fees based on certain of the *Johnson* factors, as discussed further below.

Taking these in turn, Nationstar first alleges that KB has overstated its fees by at least 25%, which is the amount of fees it agreed to share with Allmand. The Court disagrees. As explained below in the analysis of the *Johnson* factors, with very limited exceptions, KB's fees are allowable

under the review standards imposed by the Bankruptcy Code and Fifth Circuit precedent. The fact that KB agreed to share a portion of its fees with Allmand does not equate to KB not having earned those fees in the first instance. As previously discussed, however, the Court will reduce KB's fees by 25% in acknowledgement of its entry into the Co-Counsel Agreement and its failure to adequately disclose its connections with Allmand. *See* § III.B, *supra*.

Nationstar next argues that the Court should reduce KB's fees by $10,410 because the Debtor failed to make a "pre-suit demand" and because the 80-paragraph Complaint KB drafted was excessive under the lenient pleading standards of Federal Rule of Civil Procedure ("**Federal Rule**") 8. This Court disagrees. First, Nationstar cites to no statute or precedent standing for the proposition that only fees incurred after a plaintiff sends a demand letter are compensable, nor could the Court find one. To the contrary, the Nationstar Settlement permits the Debtor to file an application for payment of attorneys' fees and costs "associated with the Adversary Proceeding and incurred through the date of this Agreement." Nationstar Settlement ¶ 3. KB's fees incurred prior to filing the Compliant, including multiple pre-suit requests for information under RESPA (to which Nationstar never adequately responded) and KB's drafting of the Complaint, are clearly "associated with" the Adversary Proceeding. Second, the Court finds that the Complaint was not unnecessarily long in light of the Federal Rule 8 pleading requirements. To the contrary, the Complaint, which was only 14 pages long, gave appropriate details regarding the relationship between the parties, the Debtor's bankruptcy filings, and the facts that allegedly supported each of the numbered and unnumbered counts. Accordingly, this objection is overruled.

Nationstar also argues that the Court should deny allowance of $31,620 in fees incurred by KB after Nationstar made an offer of judgment. According to Nationstar, on February 29, 2016, it offered to waive its claim related to the Disbursement and to pay then-outstanding attorneys'

fees; however, the Debtor declined the offer and the Adversary Proceeding was litigated an additional five months before it ultimately settled (for a greater amount). Again, Nationstar cites to no statute or precedent in support of its argument. Presumably, it is referring to Federal Rule 68 titled "Offer of Judgement." That rule, however, applies to a judgment entered after a party refuses a settlement offer. FED. R. CIV. P. 68. It is not applicable to a subsequent settlement made after an initial settlement offer is refused. *Id.* Moreover, even if Federal Rule 68 were applicable to the facts of this case, it would still not relieve Nationstar of its obligation to pay allowed fees because the settlement was in an amount greater than Nationstar's offer. *See* FED. R. CIV. P. 68(d), as made applicable by FED. R. BANKR. P. 7068 ("If the judgment that the offeree finally obtains is not more favorable than the unaccepted offer, the offeree must pay the costs incurred after the offer was made."). As such, this objection is overruled.

Nationstar further argues that the Court should deny $1,635 in fees related to KB sending multiple requests for information and notices of error under RESPA because they are not related to the litigation. The Court disagrees. To the contrary, KB sent the requests for information and notices of error to investigate and potentially resolve the Debtor's claims at the pre-litigation stage. Had Nationstar provided complete information to the correct attorney, the litigation may have been avoided.[9] When the requests went unheeded, KB drafted the Complaint and the Debtor formally sued Nationstar. The Court suspects that, had KB not sent the letters, Nationstar would now be complaining that the Debtor made no pre-litigation efforts to resolve the issues. Thus, the Court

---

[9] Indeed, as the Court noted at the hearing on Nationstar's motion to dismiss and status conference on its motion to withdraw the reference, KB "did everything except hand springs in [Nationstar's] offices" in order to receive correct information related to the Disbursement. Hr'g Tr. (3/1/2016) 7:1-2. And, when Nationstar did choose to respond, it sent the response to the wrong attorney. *Id.* at 7:10-11; 20:8-9 (Connop) ("Nationstar responded, albeit to the wrong layers first…").

finds that the fees incurred by KB in sending the pre-litigation letters to Nationstar were "associated with" the Adversary Proceeding, and Nationstar's objection is overruled.

Next, Nationstar argues that the Court should deny $862.50 in fees related to KB filing an amended objection to Nationstar's claim because the objection was not "associated with" the litigation. To the contrary, on March 9, 2016, the Court entered an Order granting an agreed motion to consolidate the claim objection into the Adversary Proceeding [BC ECF No. 60]. Accordingly, the amended claim objection is clearly "associated with" the Adversary Proceeding, and Nationstar's objection is overruled.

The last of Nationstar's general objections relates to $2,560 in fees allegedly incurred by KB after the parties entered into the Nationstar Settlement, which Nationstar argues should not be allowed because KB gives no explanation of how the post-settlement fees "advanced the Debtor's claim for a stay violation, and it is difficult to discern how the post-settlement fees could have created any additional benefit." Response ¶ 31. As previously explained, however, neither the Fee Application nor the Nationstar Settlement limit the fees for which KB may seek approval to those related to Nationstar's alleged stay violation. Nonetheless, Bartholow announced at the outset of the Fee Hearing that KB would voluntarily waive its fees incurred after entry into the Nationstar Settlement on August 31, 2016,[10] which both KB and this Court calculate to total $1,550. Hr'g Tr. (5/1/17) 6:8-10, 13:8-14:3 (Bartholow). As such, the Court will partially sustain Nationstar's objection and will not allow $1,550 in fees incurred by KB after August 31, 2016.

With Nationstar's general objections resolved, the Court will now turn its attention to an analysis of KB's fees under the applicable *Johnson* factors and Nationstar's remaining objections related thereto.

---

[10] The Nationstar Settlement is deemed to have been executed as of the last date set forth in the signature blocks, which is August 31, 2016. Nationstar Settlement at 5.

C.      Analysis of the *Johnson* Factors

i.      **Time and Labor Required**

KB requests allowance of $71,575 in fees for services rendered to the Debtor in relation to the Adversary Proceeding. This amount reflects 289.20 hours of total attorney and paralegal time, resulting in an overall blended hourly rate of approximately $247.50 per hour. Based upon its review of the Fee Application and the evidence presented at Fee Hearing, the Court finds that all but $2,200[11] of the fees requested were beneficial to the Debtor and necessary in light of the highly contentious nature of the Adversary Proceeding. Although Nationstar complains that the requested fees are far too high in light of the results obtained, the Court finds that a significant portion of KB's fees were incurred as a direct result of Nationstar's posturing in the Adversary Proceeding and the Second Bankruptcy Case, including its failure to properly respond to information requests, filing a motion to lift stay that was subsequently withdrawn, and filing motions to dismiss certain claims and to withdraw the reference of the Adversary Proceeding. While Nationstar had every right to take these actions, it cannot now argue that the Court should disallow beneficial and necessary fees incurred in responding to these actions. *See McGowan v. King, Inc.,* 661 F.2d 48, 51 (5th Cir. 1981) ("The borrower's counsel did not inflate this small case into a large one; its protraction resulted from the stalwart defense. And although defendants are not required to yield an inch or to pay a dime not due, they may by militant resistance increase the exertions required of their opponents and thus, if unsuccessful, be required to bear that cost.").

---

[11] This reduction is comprised of: (1) $320 in fees billed prior to the effective date of KB's employment (though at the Fee Hearing, KB agreed to reduce its fees by $325), (2) $325 in travel time incurred on March 1, 2016 and July 15, 2016 that was to be billed at one-half of KB's standard hourly rates per § II.G of Appendix F to the Local Bankruptcy Rules, and (3) $1,550 in fees incurred after August 31, 2016 (which KB agreed to voluntarily reduce at the Fee Hearing).

### ii.     Novelty and Difficulty of Questions Involved

Although KB is experienced in handling the types of claims alleged in the Complaint, the difficulty of the Adversary Proceeding was increased by Nationstar's actions, as described above. Overall, the Court finds that the time KB spent in prosecuting the Adversary Proceeding was commensurate with the novelty and difficulty of the issues presented.

### iii.     Skill Requisite to Perform Services Properly

KB has significant experience in bringing the types of claims alleged in the Complaint, and it prosecuted the Adversary Proceeding with the skills required to perform its services properly.

### iv.     Preclusion of Other Employment

It is unknown whether KB's representation of the Debtor in the Adversary Proceeding precluded it from accepting other employment.

### v.     Fee Customarily Charged

The billing records reflect that the hourly rates for the attorneys who worked on the Adversary Proceeding ranged from $200 per hour for the most-junior associate to $500 per hour for the most-senior partner. Overall, the hourly rates charged by KB are within the range of those customarily charged by professionals having comparable skills and expertise in similar matters.

### vi.     Whether the Fee is Fixed or Contingent

As reflected in the Engagement Letter, the Debtor agreed to compensate KB at its hourly rates. In the Fee Application, however, KB alleges that, because it is unlikely that the Debtor has the resources to pay its fee, KB rendered its services in a situation akin to a contingency fee agreement, which KB argues justifies an upward adjustment of the lodestar. Nationstar objects to any upward adjustment because (1) the Engagement Letter clearly states that the Debtor employed KB on an hourly basis, and (2) if KB's fees were on a standard contingency-fee basis of 33-40%, its fees would be between $9,061.43 and $10,983. The Court agrees with Nationstar that KB's

engagement was clearly on an hourly basis. Moreover, the Court finds that an upward adjustment of KB's fees is not warranted under the facts here.

### vii. Time Limitations Imposed by Client or Circumstances

The time limitations imposed by the Debtor and the circumstances surrounding the Adversary Proceeding were not unusual or out of the ordinary for a lawsuit of this size and complexity.

### viii. Amounts Involved and Results Obtained

Nationstar objects under this *Johnson* factor. According to Nationstar, it proposed a settlement to the Debtor on February 29, 2016 offering to waive its $12,321.38 claim related to the Disbursement and to pay then-outstanding attorneys' fees. The Debtor declined this offer, and the parties' ultimately reached the Nationstar Settlement whereby Nationstar agreed to waive $27,458.87 in pre- and postpetition arrearages, which included its claim related to the Disbursement, and to pay KB's allowed attorneys' fees and costs through the date of settlement. Response ¶ 36. During the intervening five months, however, KB incurred an additional $31,620 in fees. *Id.* Nationstar argues that the results KB obtained for the Debtor above Nationstar's initial settlement offer (approximately $15,137) are grossly outweighed by the additional attorneys' fees KB incurred during the intervening five months (approximately $31,620). The Court disagrees, as explained below.

Although this is a somewhat typical consumer lawsuit in that the amounts involved are relatively small, the results obtained were significant to the Debtor in comparison to her limited resources. Pursuant to the Nationstar Settlement, the Debtor's overall loan balance was reduced by several thousand dollars, the claim related to the Disbursement was waived, and her monthly mortgage payments were reduced. Overall, the Nationstar Settlement will permit the Debtor to keep her home, assuming she remains current on future payments. The Debtor derived substantial

and meaningful benefit from the work performed by KB in the Adversary Proceeding. Thus, Nationstar's objection is overruled.

### ix. Experience, Reputation, and Ability of Professional

As testified to at the Fee Hearing, both Ms. Kellett and Mr. Bartholow have substantial experience in consumer litigation, and KB has a good reputation within the community for prosecuting the types of claims alleged in the Complaint.

### x. Undesirability of Case

Although KB alleges in the Fee Application that the risk of not being compensated for work performed and the inherent delay in receiving compensation made this lawsuit somewhat undesirable, it appears to the Court that such risks are standard for this type of representation.

### xi. Nature and Length of Professional Relationship with the Client

This factor is not relevant here because KB had no professional relationship with the Debtor prior to its retention to pursue the Debtor's claims against Nationstar.

### xii. Awards in Similar Cases

Based upon its experience, the Court finds that the compensation requested, although somewhat high, is consistent with awards in similar cases. And, to a large extent, the incremental fees incurred by KB were precipitated by Nationstar's conduct here.

### D. Award of Expenses

Nationstar objects to KB's requested expenses arguing that it should not be required to pay (1) $36.88 in expenses related to mailing costs for the RESPA requests for information and notices of error, and (2) $1,350 in voluntary mediation fees because neither expense is "associated with" the Adversary Proceeding. Once again, the Court disagrees. Both expenses are clearly "associated with" the Adversary Proceeding, either as pre-litigation information requests or fees incurred in

an attempt to settle the litigation. Moreover, KB incurred each expense during the relevant period

and each expense was reasonable and necessary. Accordingly, Nationstar's objection is overruled.

As to overall expenses, the Court has reviewed the expense detail contained within the Fee

Application and finds that the expenses KB incurred for which it seeks reimbursement were (1)

reasonable, (2) necessary, and (3) "associated with" its representation of the Debtor in the

Adversary Proceeding. Accordingly, the Court will allow KB's expenses in the requested amount

of $1,585.

## V.    CONCLUSION

For the reasons explained above, the Court finds and concludes that:

- Each element necessary to establish that the Co-Counsel Agreement is a fee-sharing agreement prohibited by 11 U.S.C. § 504(a) has been met. More specifically, (1) the compensation awarded to KB in association with the Adversary Proceeding is pursuant to §§ 330(a)(4)(B) and 503(b)(2) of the Bankruptcy Code, (2) KB and Allmand agreed that Allmand would share in any compensation awarded by the Court to KB, and (3) KB and Allmand do not fit within one of the statutory exceptions found in § 504(b).

- The 25% fee payable by KB to Allmand under the Co-Counsel Agreement is not reasonable compensation for the services rendered by Allmand in the Adversary Proceeding. As such, the Court will cancel the Co-Counsel Agreement in accordance with 11 U.S.C. § 329(b). Upon its cancellation, the Co-Counsel Agreement will be unenforceable and Allmand shall not be entitled to any portion of the fees awarded to KB herein.

- Although it will not set aside the Employment Order, the Court will sua sponte amend the Employment Order to the extent it may have impliedly authorized KB to enter into the Co-Counsel Agreement.

- Although the Court could allow KB reasonable and necessary fees of $69,375, it will instead award KB fees of $52,031.25, with the reduction imposed as a sanction for KB's entry into an impermissible fee sharing agreement with Allmand in violation of 11 U.S.C. § 504 and its failure to adequately disclose the compensation structure of the Co-Counsel Agreement and its prior connections with Allmand. The $52,031.25 in fees awarded to KB herein were reasonable, beneficial and necessary, and meet all applicable requirements for allowance set forth in 11 U.S.C. § 330 and applicable Fifth Circuit precedent. The services rendered by KB were "associated with" the Adversary Proceeding and were performed during the relevant period. Thus, the fees are compensable under the terms of the Nationstar Settlement.

- KB's expenses of $1,585.00 were reasonable and necessary costs associated with the Adversary Proceeding and KB incurred the expenses during the relevant period. Thus, the expenses are reimbursable under the Nationstar Settlement.

Accordingly, it is hereby

ORDERED that any objection to the allowance of KB's fees and expenses not sustained in this Memorandum Opinion and Order is hereby overruled. It is further

ORDERED that KB is allowed $52,031.25 in reasonable and necessary fees for the services it provided for the period of November 7, 2014 through and including August 31, 2016 that were associated with the Adversary Proceeding. It is further

ORDERED that KB is allowed $1,585.00 as reimbursement of reasonable and necessary expenses it incurred for the period of November 7, 2014 through and including August 31, 2016 that were associated with the Adversary Proceeding. It is further

ORDERED that the Co-Counsel Agreement between KB and Allmand is cancelled in accordance with 11 U.S.C. § 329(b) and shall not be enforceable against KB. It is further

ORDERED that the Employment Order is hereby amended to the extent it may have impliedly authorized KB to enter into the Co-Counsel Agreement. The terms of KB's employment, however, are otherwise unchanged. It is further

ORDERED that Allmand shall share in no portion of the compensation or reimbursement of expenses allowed to KB under the terms of this Memorandum Opinion and Order. It is further

ORDERED that this Memorandum Opinion and Order is without prejudice to any fees and/or expenses that Allmand may be entitled to in its capacity as Debtor's bankruptcy counsel in the Second Bankruptcy Case based upon either the "standard fee" permitted under ¶ 21 of this Court's Standing Order Concerning All Chapter 13 Cases (General Order 2016-01) or any application that Allmand may file with the Court seeking fees based upon its standard hourly rates.

### # # # END OF MEMORANDUM OPINION AND ORDER # # #